# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00049-PB |
| | ) | |
| MICHAEL CICCIU | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John J. Farley, United States Attorney for the District of New Hampshire, and the defendant, Michael Cicciu, and the defendant's attorney, Charles Keefe, Esquire, enter into the following Plea Agreement:

1.  The Plea and The Offense.

The defendant agrees to plead guilty to Count One of the Indictment that charges him with Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 841 (a)(1), and Count Two that charges him with Maintaining a Drug-Involved Premises, in violation of Title 21, United States Code, Section 856(a)(2).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2.  The Statute and Elements of the Offense.

Title 21, United States Code, Section 841 (a)(1) provides, in pertinent part:

It shall be unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled substance.
21 U.S.C. § 841 (a)(1).

The defendant understands that the offense has the following elements, each of which the

- 1 -

United States would be required to prove beyond a reasonable doubt at trial:

> First:   that the defendant possessed a controlled substance, either actually or constructively;
>
> Second:   that the defendant did so with a specific intent to distribute the controlled substance over which he had actual or constructive possession, and,
>
> Third:   that the defendant did so knowingly and intentionally.

[*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2017 Revisions,* Instruction 4.21.841(a)(1), http://www.med.uscourts.gov/pdf/crpjilinks.pdf.]

21 U.S.C. §856(a)(2) provides in relevant part:

> It shall be unlawful to manage or control any place, whether permanently or temporarily, as an owner, and knowingly and intentionally rent or make available for use, with or without compensation, the place for the purpose of unlawfully storing, distributing or using a controlled substance.

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

> First:   that the defendant managed or controlled the premises identified in the indictment;
>
> Second:   that the defendant knowingly and intentionally made the premises identified in the indictment available for use by others; and,
>
> Third:   that the defendant made the premises identified in the indictment available for the purpose of unlawfully possessing or distributing a controlled substance.

*United States v. Bilis*, 170 F.3d 88, 92 (1st Cir. 1999).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government

would introduce evidence of the following facts, which would prove the elements of the offense

beyond a reasonable doubt:

**Count One:**

On August 31, 2020, Manchester Police Department (MPD) detectives obtained a state search warrant for 315 E. High Street based on evidence garnered from surveillance and post-arrest statements from both buyers and suppliers of drugs.   On September 3, 2020, MPD and SWAT executed the warrant as well as an arrest warrant for Cicciu.   Upon arrest, Cicciu had on his person a baggie of suspected fentanyl and an apparent drug ledger written on a receipt.   The suspected fentanyl later tested positive for 7.63 grams of fentanyl.   Detectives found a cellphone and smaller quantities of suspected methamphetamine in Cicciu's bedroom.

**Count Two:**

On June 8, 2018, Michael Ciccu purchased through a Warranty Deed the residential building located at 315 E. High Street, Manchester, New Hampshire.   Cicciu has managed and controlled the premises and made it available for others to use for the purpose of unlawfully storing, distributing, and using controlled substances.   Specifically:

- On September 3, 2020, while executing a state search warrant for 315 E. High Street, Manchester Police detectives located a man and a woman occupying a bedroom on the premises.   In the bedroom, detectives located a money counter and distributive quantities of fentanyl and methamphetamine.   Cicciu resided in an adjacent bedroom.

- On October 22, 2019, Manchester Police detectives and DEA agents executed a search warrant for 315 E. High Street and arrested Johnathan Sargent on a warrant for two controlled buys.   In sum, they located several assault-style rifles, a handgun, ammunition, brass knuckles, approximately two pounds of methamphetamine, nearly 140 grams of heroin/fentanyl, scales, safes, cash, and several cellphones.   Most of the evidence was found in a bedroom identified through various sources of evidence as belonging to Sargent.   Additionally, jail calls generated evidence concerning Sargent's control over the bedroom in question.   At the time of the search, Cicciu admitted that he rented the room to Sargent for $200 a month and described people "coming and going all hours of the night."   He claimed that he did not want to know what Sargent was doing, but "it wasn't good."   During the search, detectives searched a woman at the premises who possessed user quantities of drugs.   In a separate bedroom they found evidence that male subject   known to detectives through intelligence was distributing methamphetamine from the bedroom.

- On October 26, 2019, a man overdosed in 315 E. High Street.   His body still had a needle in his arm when police arrived.   Detectives located user quantities of opiates on his person.

- On November 20, 2020, Manchester Police Department detectives were

surveilling 315 East High Street to monitor suspected ongoing distribution activities.   At about 1:15 PM, Justin Stilson tapped on Cicciu's bedroom window and then entered the residence.   Soon, he left with a backpack accompanied by Jacqueline Reason, both with known drug histories.   A subsequent investigative stop resulted in a consent search of the backpack yielding 173.024 grams of fentanyl, 12.813 grams of methamphetamine, and 4.95 grams of crack cocaine.

- On August 18, 2020, a man was arrested for possessing fentanyl after leaving the residence.

- On August 19, 2020, another man was arrested for possessing crack cocaine after leaving the residence.

- On August 24, 2020, a police interviewed an individual who said s/he supplyied Cicciu with significant quantities of fentanyl that Cicciu redistributed from his bedroom.   The indidual also claimed that another male distributed drugs from a second bedroom within the residence.

- On August 26, 2020, another man was arrested after leaving 315 E. High St. and crashing his car while fleeing from police.    The man possessed quantities of methamphetamine and crack, and    admitted that he daily distributed significant quantities of fentanyl and methamphetamine from the residence.   The man named two other individuals selling drugs from the other two bedrooms in 315 E. High St.

4.  <u>Penalties, Special Assessment and Restitution</u>.

The defendant understands that the penalties for the offenses are:

A.     a term of imprisonment of not more than 20 years. (21 U.S.C. §§ 841 (b)(1)(C) & 856(b));

B.     A maximum fine of $1,000,000 on Count One and a maximum fine of $500,000 on Count Two ([21 U.S.C. §§ 841(b)(1)(C) & 856(b)]);

C.     A term of supervised release of at least 3 years (21 U.S.C. § 842(b)(1)(C)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

- 4 -

D.     A mandatory special assessment of $200, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.     Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.     Respond to questions from the Court;

C.     Correct any inaccuracies in the pre-sentence report;

D.     Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree to the following:

- 5 -

(a)     30 months' imprisonment is an appropriate disposition of this case.

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.  <u>Acceptance of Responsibility</u>.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

- 6 -

F.     Obstructs or attempts to obstruct justice, prior to sentencing;

G.     Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.     Fails to appear in court as required;

I.     After signing this Plea Agreement, engages in additional criminal conduct; or

J.     Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.  <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10.  Scope of Agreement.

- 8 -

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration

consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

Forfeiture

The defendant agrees to immediately and voluntarily forfeit to the United States his interest, if any, in any and all property subject to forfeiture pursuant to 21 U.S.C. § 853 as a result of his guilty plea, including, but not limited to:   Land and Buildings located at 315 East High Street, Manchester, New Hampshire, with all Appurtenances and Improvements Thereon ("Forfeitable Property").

The defendant further agrees:

A.   Not to contest any administrative, civil or criminal forfeiture proceedings commenced against the Forfeitable Property.   Defendant shall withdraw any and all claims and/or petitions for remission for all or part of the Forfeitable Property filed on behalf of himself or any other individual or entity, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property;

B.   To take whatever steps are necessary to pass clear title to the United States for the Forfeitable Property, including, without limitation, to: (1) assent to a preliminary motion for a final order of forfeiture; (2) provide any documents the United States requests to accomplish transfer of title; (3) complete any other legal documents required for the transfer of title to the United States, and (4) prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so;

C.    That none of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States;

D.    To waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (A) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (B) the Court=s failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) at the change of plea hearing; and, (C) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.    The defendant further acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case;

E.    To waive and release any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not; and

F.    To hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that the properties to be forfeited under this section are subject to forfeiture as property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations, or property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the illegal conduct.

12.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13.   Waivers.

A.   Appeal.

- 12 -

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.   Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.   His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.   No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.   Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.   Agreement Provisions Not Severable.

- 14 -

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN J. FARLEY
United States Attorney

Date: _5 - 9 - 2022_

By: _____

Joachim Barth
Assistant United States Attorney
Bar Association #8757
53 Pleasant St., 4th Floor
Concord, NH 03301
Joachim.barth@usdoj.gov

The defendant, Michael Cicciu, certifies that he has read this 15-page Plea Agreement and that he fully understands and accepts its terms.

Date: _4/28/22_

_____
Michael Cicciu, Defendant

I have read and explained this 15-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _4/28/22_

_____
Charles Keefe, Esquire
Attorney for Michael Cicciu

- 15 -